[Cite as *O'Brien v. Ohio Bur. Workers' Comp.*, 2026-Ohio-3001.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Hagen O'Brien, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 25AP-608 |
| v. | : | (Ct. of Cl. No. 2023-00659JD) |
| Ohio Bureau of Workers' Compensation, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on August 4, 2026

**On brief:** *Agee Clymer Mitchell & Portman*, and *Sharon Cason-Adams*, for appellant. **Argued:** *Sharon Cason-Adams*.

**On brief:** [*Andy Wilson*], Attorney General, *Michelle C. Brizes*, and *Timothy M. Miller*, for appellee. **Argued:** *Timothy M. Miller*.

APPEAL from the Court of Claims of Ohio

DORRIAN, J.

{¶ 1} Plaintiff-appellant, Hagen O'Brien, appeals from a judgment of the Court of Claims of Ohio granting the motion for summary judgment of defendant-appellee, Ohio Bureau of Workers' Compensation ("BWC"). For the following reasons, we affirm in part and reverse in part.

**I. Facts and Procedural History**

{¶ 2} This matter arises from an employment dispute between appellant and appellee.

{¶ 3} Appellant began working for appellee in January 2016. During the period relevant to this case, appellant was employed as a compensation claims specialist ("CSS"), and handled workers' compensation claims involving interstate jurisdiction.

{¶ 4} Appellant alleged that, in 2020, his workload increased due to the reassignment of some CSS employees to COVID-19 occupational disease claims which exacerbated his stress and anxiety.

{¶ 5} In April 2021, Melody Dials became appellant's supervisor. Appellant alleged that, shortly after Dials began her supervisor role, he told her about his workload concerns and the adverse effect of the job on his anxiety and depression.

{¶ 6} In May 2021, appellant was the subject of an investigation based on an e-mail he sent to an injured worker that management characterized as "rude and discourteous." An investigatory interview on this matter was held on May 18, 2021.

{¶ 7} On May 24, 2021, appellant e-mailed the "BWC EEO" e-mail address, copying a number of BWC employees, including Dials, the subject of which read, "HR 8.01 Equal Employment Opportunity (EEO) and Anti-Discrimination Policy." (Dials Depo. Ex. 41.) He noted that he had been presented a five-day working suspension as a result of the investigation involving the e-mail. He stated, "I believe this effort to discipline me constitutes evidence [sic] all three categories: discrimination, harassment _and_ retaliation," and he stated he would report the matter to the Ohio Department of Administrative Services Equal Opportunity Division and the Federal Equal Employment Opportunity Commission. (Dials Depo. Ex. 41.) In the same e-mail, appellant outlined other events leading up to the May 2021 investigation, including two occasions of prior discipline in 2020, including another incident involving a communication deemed to have been "rude and discourteous behavior." (Dials Depo. Ex. 41.)

{¶ 8} On June 2, 2021, Rolnecia Albert, the BWC's Equal Employment Opportunity ("EEO") Officer, e-mailed appellant and asked him to submit an internal EEO complaint form by June 4. Appellant ultimately submitted the form around late June 2021.

{¶ 9} Also on June 2, 2021, a pre-disciplinary hearing was held regarding the e-mail under investigation. A five-day working suspension with pay was imposed on June 9, 2021, to be served June 14 through 18, 2021. Appellant filed a grievance regarding the discipline, which was denied at first.

{¶ 10} Appellant alleged that, on June 14, 2021, he requested accommodation pursuant to the Americans with Disabilities Act ("ADA") while on a phone call with Dials.

{¶ 11} On July 13, 2021, the BWC held a "step 2" hearing for appellant's grievance regarding his discipline.

{¶ 12} On July 14, 2021, appellant e-mailed Dials and Claims Director Wilma Perez-Rhone asking for their advice on how he should respond to an attorney's inquiry regarding the status of an injured worker's claim. In the e-mail, he also noted his claims backlog and his belief that he had received more complex claims than his co-worker, Mary Manson, which was causing him stress. He stated that, during a phone call with Dials on June 14, he had asked for a reasonable accommodation by a redistribution of his workload to help him manage his stress and anxiety.

{¶ 13} The next day, on July 15, 2021, Dials and appellant exchanged additional e-mails regarding his work performance, his belief that his co-worker was not managing the same amount of work, and the effects of the work on his stress and anxiety. The same day, Perez-Rhone forwarded appellant's e-mail exchange with Dials to Krista Downs, a BWC Labor Relations Officer, stating she felt it necessary to put appellant on an action plan in response to his inability to keep up with expectations and work tasks.

{¶ 14} Also on July 15, 2021, Albert wrote to appellant and attached the BWC's ADA policy, noting that appellant had referenced the need for an ADA accommodation during an interview that day. Albert asked appellant to review the policy and to complete an ADA request form and submit the accompanying documentation if he believed he qualified under the policy.

{¶ 15} Around 4:30 p.m. on July 15, 2021, Dials e-mailed appellant with a list of tasks to accomplish before July 19 to address his outstanding and overdue items. She also scheduled a meeting with him for July 19 to further discuss his workload and expectations.

{¶ 16} On July 19, 2021, Dials informed appellant that he would be placed on a 14-day action plan.

{¶ 17} On July 20, 2021, appellant submitted a completed "ADA Reasonable Accommodation Request Questionnaire" to the BWC.

{¶ 18} As part of the action plan, appellant was required to work in the office rather than from home beginning July 29, 2021. On that day, appellant reported to work and

alleged that he began experiencing symptoms of an anxiety attack. Ultimately, appellant left work on July 29, 2021, and was eventually approved for disability leave as of July 30, 2021.

{¶ 19} Appellant alleged that, on September 22, 2021, he filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") alleging disability and sexual orientation discrimination, as well as retaliation. According to appellant, the EEOC issued a Notice of Rights letter on July 14, 2023.

{¶ 20} In August 2022, appellant requested an opportunity to return to work with accommodation after receiving notice that appellee wanted to discuss involuntary disability separation. Appellant returned to work on August 31, 2022. On January 1, 2023, appellant was promoted to a different role.

{¶ 21} On October 12, 2023, appellant filed a complaint in the Court of Claims, asserting claims for disability discrimination and failure to accommodate under federal and state law, retaliation in violation of federal and state law for requesting a disability accommodation, and sex discrimination based on sexual orientation under federal law.

{¶ 22} On February 28, 2025, appellee moved for summary judgment.

{¶ 23} On July 2, 2025, the Court of Claims filed a decision granting appellee's motion for summary judgment.

## II. Assignments of Error

{¶ 24} Appellant timely appeals and assigns the following three assignments of error for our review:

> [I.] The trial court erred and abused its discretion in granting Appellee Bureau of Workers' Compensation's Motion for Summary Judgment and dismissing Appellant Hagen O'Brien's disability discrimination (failure to accommodate) claims.
>
> [II.] The trial court erred and abused its discretion in granting Appellee Bureau of Workers' Compensation's Motion for Summary Judgment and dismissing Appellant Hagen O'Brien's disability discrimination claims.
>
> [III.] The trial court erred and abused its discretion in granting Appellee Bureau of Workers' Compensation's Motion for Summary Judgment and dismissing Appellant Hagen O'Brien's retaliation claims.

## III.  Discussion

{¶ 25} Although the Court of Claims concluded that appellee was entitled to summary judgment on appellant's sex discrimination claim, none of appellant's assignments of error in this appeal challenge that conclusion.  Therefore, we focus our analysis only on appellant's claims for disability discrimination, including his failure to accommodate and retaliation claims.

### A.  Standard of Review

{¶ 26} An appellate court reviews summary judgment under a de novo standard. *Brisco v. U.S. Restoration & Remodeling, Inc.*, 2015-Ohio-3567, ¶ 19 (10th Dist.), citing *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41 (9th Dist. 1995).  Summary judgment is appropriate only when the moving party demonstrates (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor.  Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 1997-Ohio-221.

{¶ 27} Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record demonstrating the absence of a genuine issue of material fact.  *Dresher v. Burt*, 1996-Ohio-107.  If the moving party fails to satisfy its initial burden, the court must deny the motion for summary judgment; however, if the moving party satisfies its initial burden, summary judgment is appropriate unless the non-moving party responds, by affidavit or otherwise as provided under Civ.R. 56, with specific facts demonstrating a genuine issue exists for trial.  *Id.*; *Hall v. Ohio State Univ. College of Humanities*, 2012-Ohio-5036, ¶ 12 (10th Dist.), citing *Henkle v. Henkle*, 75 Ohio App.3d 732, 735 (12th Dist. 1991).

### B. Legal Background

{¶ 28} The ADA prohibits employers from discriminating against qualified individuals on the basis of disability.  42 U.S.C. 12112(a).  Ohio law also provides that it is an unlawful discriminatory practice "[f]or any employer, because of the . . . disability . . . of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of

employment, or any matter directly or indirectly related to employment." R.C. 4112.02(A). For the purpose of this statute, "disability" is "a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment." R.C. 4112.01(A)(13). Because the statutory language is similar, Ohio courts look to federal case law as guidance when reviewing state employment discrimination claims. *Coryell v. Bank One Trust Co. N.A.*, 2004-Ohio-723, ¶ 15; *see also Chiancone v. Akron*, 2014-Ohio-1500, ¶ 16 (9th Dist.) ("The Supreme Court of Ohio has consistently held that a court considering a disability discrimination claim pursuant to R.C. 4112.02 may look to case law interpreting the Americans with Disabilities Act for guidance.").

### C. Assignments of Error

### First assignment of error - failure to accommodate

{¶ 29} In his first assignment of error, appellant argues that the Court of Claims abused its discretion in granting summary judgment to appellee on appellant's claim that appellee failed to accommodate his disability.

{¶ 30} Under federal law, disability discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]." 42 U.S.C. 12112(b)(5)(A). Similarly, Adm.Code 4112-5-08(E)(1) states: "An employer must make reasonable accommodation(s) to the disability of an employee . . . unless the employer can demonstrate that such an accommodation(s) would impose an undue hardship on the conduct of the employer's business." *See DeCesare v. Niles City School Dist. Bd. of Edn.*, 2003-Ohio-5349, ¶ 21 (11th Dist.) ("Ohio Administrative Code places a duty on employers to make reasonable accommodations."). "Accommodations may take the form, for example, of providing access to the job, job restructuring, acquisition or modification of equipment or devices or a combination of any of these. Job restructuring may consist, among other things, of realignment of duties,

revision of job descriptions or modified and part-time work schedules." Adm.Code 4112-5-08(E)(2).

{¶ 31} To establish a prima facie claim of failure to accommodate, the plaintiff-employee must show that (1) the employee is disabled; (2) the employee is otherwise qualified for the position with or without reasonable accommodation; (3) the employer knew or had reason to know about the employee's disability; (4) the employee requested an accommodation; and (5) the employer failed to provide the necessary accommodation. *Coomer v. Opportunities for Ohioans with Disabilities*, 2022-Ohio-387, ¶ 17 (10th Dist.); *DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004). Once the plaintiff has presented a prima facie case, the burden shifts to the employer to demonstrate that the employee cannot reasonably be accommodated because the accommodation would impose an undue hardship on the employer. *Coomer* at ¶ 17; *DiCarlo* at 419.

{¶ 32} Appellant alleged in his complaint that appellee failed to accommodate his disability by not redistributing his workload and by discontinuing his telework arrangement. Appellant also alleged that appellee failed to engage in a good faith interactive process to determine an objectively reasonable accommodation.

{¶ 33} The Court of Claims found there was no dispute that appellant is disabled and was qualified for his job. The parties have not raised arguments challenging those conclusions. Therefore, we focus our analysis on the Court of Claims' conclusions that appellant did not request a reasonable accommodation and that he failed to fulfill his obligation to participate in the interactive process.

{¶ 34} The Court of Claims found that it was "uncontested" that appellant first proposed an accommodation in 2021 when he requested that half of his caseload be exchanged with his co-worker. (July 2, 2025 Decision at 23.) This is consistent with appellant's response to appellee's motion for summary judgment in which he stated, "During a June 14, 2021 one-on-one with Dials, O'Brien explicitly requested a reasonable accommodation by way of distribution of workload to help him better manage is [sic] anxiety and stress." (Response to Mot. for Summ. Jgmt. at 6.) Although appellant appears to also argue that he began requesting various accommodations in 2020, the basis of appellant's failure to accommodate claim, as alleged in his complaint, is that appellee ignored his request to re-distribute his workload and terminated his telework

arrangement.[1] We agree with the Court of Claims that the evidence demonstrates appellant communicated his request to re-distribute his workload as an accommodation in 2021.

{¶ 35} The Court of Claims further found, however, that appellant did not request a *reasonable* accommodation because he failed to meet his burden to demonstrate that his request to transfer half his caseload would aid his problems.

{¶ 36} The plaintiff bears the burden of proposing an accommodation that seems reasonable on its face. *Coomer*, 2022-Ohio-387, at ¶ 17 (10th Dist.), citing *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 419 (6th Cir. 2020). The reasonableness of the requested accommodation is generally a question of fact. *Coomer* at ¶ 17, citing *Keith v. Cty. of Oakland*, 703 F.3d 918, 927 (6th Cir. 2013).

{¶ 37} On the one hand, appellee presented evidence that cases were assigned in round-robin fashion to support the inference that appellant's caseload could not have been intentionally more complex than his co-worker's caseload. (*See* Mot. for Summ. Jgmt., Dials Aff. at ¶ 8) ("During the time I supervised O'Brien, an automated system assigned claims to specialists by rotation within a given specialty area based solely on the order in which the claims were received by BWC. No one specialist is assigned more claims than another as claims are received."). On the other hand, appellant presented evidence that his co-worker was spared more complex claims when she began working at BWC. Specifically, Phillips averred that, at the time she left the BWC in 2020, "Hagen was still handling a disproportionate amount of interstate commerce claims. In addition, I had been giving him the more complex claims because [Manson] was still not up to speed," due to the

---

[1] Appellant argues in his brief that the affidavit submitted by his former supervisor, Amy Phillips, provides evidence that he began requesting accommodations in 2020. But the accommodations that Phillips recalled appellant requesting in 2020 did not include a request that appellant's workload be redistributed with that of his co-worker's workload. Phillips averred as follows:

> I recall that, in the first half of 2020, Hagen began to verbalize that he needed help with his workload. He informed me that he was experiencing a high level of stress. He informed me that he was experiencing panic attacks, ocular migraines and breakouts/skin eruptions. He expressed concern that he was getting behind in his work and it was adversely affecting his mental and physical health. He asked for an additional work monitor, the opportunity to work overtime and assistance managing his caseload.

(Phillips Aff. at ¶ 12.)

impairment of her training during COVID-19. (*See* Response to Summ. Jgmt., Phillips Aff. at ¶ 20.)

{¶ 38} Based on the foregoing, and construing the evidence in appellant's favor, we find that appellant has presented evidence creating a question of fact regarding whether his caseload included more complex cases such that an exchange of work with his co-worker would aid his problems. Accordingly, we cannot agree with the trial court that appellant failed to request a reasonable accommodation.

{¶ 39} Moreover, whether an accommodation is a reasonable one also implicates the interactive process. "Federal courts have recognized that the duty of an employer to make a reasonable accommodation also mandates that the employer interact with an employee in a good faith effort to seek a reasonable accommodation." *Shaver v. Wolske & Blue*, 138 Ohio App.3d 653, 664 (10th Dist. 2000), citing *Taylor v. Phoenixville School Dist.*, 184 F.3d 296, 311-12 (3d Cir. 1999).

{¶ 40} "To show that an employer failed to participate in the interactive process, a disabled employee must demonstrate: 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith." *Shaver* at 664, citing *Taylor* at 319-20.

{¶ 41} Here, the Court of Claims found that the action plan was a reasonable accommodation offered to appellant and it was appellant who removed himself from the interactive process because he took a leave of absence from work before the action plan was complete. Appellee argues the action plan was intended to help appellant with his work volume even if it was not a direct response to his request for accommodation and, when appellant left work on July 29 without completing the action plan, "he effectively halted the interactive process before it could begin." (Appellee Brief at 18-19.) Appellant contends that the action plan was implemented without his input and could not have been an accommodation or the result of any interactive process.

{¶ 42} The record evidence demonstrates that appellant sent an e-mail to Dials and Perez-Rhone on July 14, 2021, asking for their advice on how he should respond to an attorney's inquiry about the status of an injured worker's claim. In that e-mail, appellant

added, "I need to know what it's going to take to be heard on my many requests for redistribution of work." (Dials Depo. Ex. 2, Attachment L.) He noted his backlog of C-60 applications, his belief that he had received more complex claims than his co-worker, and the growing backlog was causing him increased stress. He stated, "I mentioned needing help a month ago during our hour-long one-on-one meeting of 06/14/2021, when I asked for a reasonable request for accommodation by way of distribution of workload to help better manage my anxiety and stress." (Dials Depo. Ex. 2, Attachment L.) He noted that he had received no update in the month since that conversation.

{¶ 43} On July 15, 2021, Dials responded to appellant by e-mail, stating that she had heard his concerns and was working on a solution with Dusty Valley (another Injury Management Supervisor, like Dials) and Perez-Rhone to be shared by the end of the month. She added that she had proposed a solution to address his C-60 backlog and noted, "[w]hile you worked on this solution for a couple days, it seems that you stopped after 2 or 3 days and went back to 'business as usual' by letting those applications continue to sit." (Dials Depo. Ex. 2, Attachment L.) Dials noted that was not acceptable, that she would continue to work on a plan, and advised him how to respond to the attorney inquiry in the meantime.

{¶ 44} Appellant replied by e-mail on the same day and stated that he had been "patient for two years now, making request after request, working with the ups and downs of ever-shifting priorities for each supervisor and manager within our department." (Dials Depo. Ex. 2, Attachment L.) He stated he did not believe they were taking him seriously and cited a "long-term pattern of disparate treatment." (Dials Depo. Ex. 2, Attachment L.) He referenced health conditions that he attributed to his stress and anxiety and said "all I've asked for is a redistribution of work to level the playing field." (Dials Depo. Ex. 2, Attachment L.) Appellant's e-mail also included statements appearing to suggest leadership had "turned on" him after he informed them his workload was too much by pursuing discipline against him for "innocuous e-mails." (Dials Depo. Ex. 2, Attachment L.) He stated that "this culture of complicit inaction and failure to respond in good faith to claims of discrimination, disparate treatment, supervisor intimidation, harassment and retaliation . . . must change." (Dials Depo. Ex. 2, Attachment L.) Finally, he criticized Dials' effort to alleviate his C-60 backlog as a "band-aid on a lesion" and said that the backlog was just one part of his delinquent workload. (Dials Depo. Ex. 2, Attachment L.)

{¶ 45} Perez-Rhone forwarded appellant's response to another BWC employee the same day and stated:

> We had Hagen's step 2 grievance meeting on the 13th. Clearly his behavior isn't going to change. He has a 5 day suspension that he is trying to fight. He and Mary are close in their caseload but their tasks is another story. He has much overdue tasks and part of the issue is the long winded responses. It is so unfair for him to assume that Mary's claims aren't complex where his are when they handle the same claim type.
>
> I am getting the feeling that this email is a way to catch her in a snare with his language about him being discriminated, harassed, retaliated against, etc. I don't want her to reply to this email and will help her come up with an email that will provide him work direction and not engage in any type of communication where she is refuting or debating him and merely sharing with him what is expected of him regarding his work product. Do you feel that is a good approach?

(Dials Depo. Ex. 10.)   The BWC employee responded, "Yes. He is creating his record.  Call me."  (Dials Depo. Ex. 10.)

{¶ 46} The same day, Perez-Rhone forwarded appellant's e-mail to Krista Downs, a Labor Relations Officer for the BWC, and wrote:

> I wanted to share an email that was received from Hagen this morning. We feel at this point that he needs to be placed on an action plan as he isn't meeting the expectations or keeping up with his work tasks. He is making quite a bit of assumptions on what his coworkers on [sic] working on when in reality he isn't completing his work. He is behind on travel reimbursements and Melody has shared this with him. Since he is unable to organize his work it seems necessary for us to direct his work.

(Dials Depo. Ex. 11.)

{¶ 47} From these e-mails, a factfinder could reasonably conclude that appellee did not consider appellant's request for a redistribution of his workload to be a reasonable accommodation because they perceived the issue to be appellant's inability to complete his work.  However, there is no evidence that appellee sought to work with appellant on an alternative accommodation.  Moreover, Dials averred that the action plan "was created as a tool for O'Brien to address a significant backlog of overdue cases and tasks and

simultaneously not fall further behind on his workload." (Dials Aff. at ¶ 6.) Thus, a factfinder could reasonably conclude that the action plan was a response to appellant's backlog and not intended as a disability accommodation.

{¶ 48} "An employer may demonstrate its good faith by showing that it met with the employee, that it requested information about the employee's condition and limitations, that it asked the employee what he or she wanted, that it showed some indication of considering the employee's request, and that it offered and discussed alternatives if the initial request was too burdensome." *Shaver*, 138 Ohio App.3d at 669, citing *Taylor*, 184 F.3d at 317. The evidence described above, construed most strongly in appellant's favor, demonstrates that there remains a dispute of fact regarding whether appellant and appellee engaged in a good faith interactive process about appellant's condition or in consideration of his request for accommodation.

{¶ 49} As the Court of Claims noted in its decision, appellant further alleged in his complaint that appellee failed to accommodate his disability by revoking his telework status. On this, the Court of Claims also concluded that appellant did not show that the request to work from home was a reasonable accommodation and that appellant had removed himself from the interactive process by taking a leave of absence on the day he reported to the office. In his reply brief, appellant acknowledged that his request to continue working from home was made after the action plan was implemented.

{¶ 50} In connection with his EEO complaint, appellant stated that he was told on July 22 that his telework agreement would be suspended effective July 29, 2021. In a communication on July 23, 2021, appellant requested to add evidence of this return-to-work requirement to the EEO complaint he submitted to the BWC, and stated he needed "to initiate a second request for accommodation," to be permitted to continue working from home "on account of both my autoimmune disorder as well as my husband's immunocompromised state." (Dials Depo. Ex. 2, Attachment N.)

{¶ 51} It does not appear that appellant submitted evidence to demonstrate that appellee was aware of appellant having an autoimmune condition prior to this communication. Appellant's medical documentation submitted with his formal request for accommodation for his anxiety condition did not mention an autoimmune condition or that remote work was necessary for such a condition. His July 23 communication about a

telework accommodation indicated that he expected to be able to provide medical documentation after appointments scheduled in August. However, appellant's departure from the office on July 29 turned into an extended leave of absence and eventual disability leave.

{¶ 52} An employee who quits before the accommodation request's resolution is at fault for any breakdown in the interactive process, not the employer. *Caldwell v. Niles City Schools*, 2021-Ohio-1543, ¶ 81 (11th Dist.), citing *McDonald v. UAW-GM Ctr. for Human Resources*, 738 Fed. Appx. 848, 855 (6th Cir. 2018). Although appellant did not quit his job when he left work on July 29, he did begin an extended period of leave. On these facts, we cannot say that there is enough evidence to create a question of fact regarding whether he made a good faith effort to participate in the interactive process or that his request for a telework accommodation was connected to a known disability.

{¶ 53} Based on the foregoing, we cannot conclude that the Court of Claims erred by granting summary judgment in appellee's favor to the extent it found that appellee did not fail to accommodate appellant's request for telework. However, as discussed above, we find there remains a genuine dispute of fact regarding whether appellee failed to accommodate appellant's disability by not redistributing his workload as requested. Accordingly, we overrule in part and sustain in part appellant's first assignment of error.

**Second assignment of error – disability discrimination**

{¶ 54} In his second assignment of error, appellant argues that the Court of Claims abused its discretion in granting summary judgment to appellee on his disability discrimination claim.

{¶ 55} Appellant alleged in his complaint that appellee discriminated against him in violation of state and federal law on the basis of his disability by "disciplining him for alleged behavior, failing to provide him with reasonable accommodation, retaliating against him, and/or otherwise discriminating against him in the terms, privileges and conditions of employment." (Compl. at ¶ 89, 106.) In the first and third assignments of error, we address appellant's allegations that appellee failed to provide him a reasonable accommodation and retaliated against him. Therefore, for this assignment of error, we focus on appellant's allegations that he was unfairly disciplined for alleged behavior and

otherwise discriminated against by the terms, privileges, and conditions of employment as a result of his disability.

{¶ 56} To prevail on a claim of disability discrimination under Ohio law, appellant must establish (1) that he was disabled, (2) that an adverse employment action was taken, at least in part, because of his disabilities, and (3) that he, although disabled, can safely and substantially perform the essential functions of the job. *Ray v. Ohio Dept. of Health*, 2018-Ohio-2163, ¶ 24 (10th Dist.), citing *Taylor v. Ohio Dept. of Job & Family Servs.*, 2011-Ohio-6060, ¶ 19 (10th Dist.). Since an employee must prove all three elements in order to establish a prima facie case of disability discrimination, the failure to establish any single element is fatal to a discrimination claim. *Id.* at ¶ 20. The prima facie case under the federal ADA is virtually identical. *Shaver*, 138 Ohio App.3d at 663; *Taylor*, 184 F.3d at 306.

{¶ 57} Absent direct evidence of discrimination, once a plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the employer to provide a legitimate, non-discriminatory reason for the adverse employment action. *Anderson v. Bright Horizons Children's Ctrs., L.L.C.*, 2022-Ohio-1031, ¶ 47 (10th Dist.), citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). If provided, the plaintiff must then demonstrate that the employer's stated reason was a pretext for discrimination. *Id.* at ¶ 47.

{¶ 58} As an initial matter, appellee argues that appellant waived his disability discrimination claim because he failed to oppose the summary judgment motion on that basis, focusing his argument instead on his claims for failure to accommodate and retaliation. It does appear that appellant raised his argument about appellee's discriminatory actions in the context of his retaliation claim. But the Court of Claims addressed appellant's disability discrimination claim as a separate argument and rejected it. Appellant has challenged that conclusion on appeal. In these circumstances, we do not find that appellant has raised new arguments on appeal or otherwise waived review of his disability discrimination claim.

{¶ 59} On the merits, the Court of Claims concluded that it did not need to resolve whether appellant could establish a prima facie case for disability discrimination because appellant did not demonstrate that appellee's actions for disciplining him in 2021 for an e-

mail deemed to be rude and placing appellant on the action plan were a pretext for disability discrimination.

{¶ 60} We find, however, that appellant has not presented evidence of an adverse employment action sufficient to establish a prima facie case of employment discrimination. And the prima facie case must be established before the question of discriminatory pretext is relevant. Therefore, we overrule appellant's second assignment of error. *See Innovative Architectural Planners, Inc. v. Ohio Dept. of Adm. Servs.*, 2024-Ohio-824, ¶ 26 (10th Dist.) (noting that an appellate court may affirm a summary judgment ruling if it determines that the judgment is appropriate, albeit for different reasons than those articulated by the trial court).

{¶ 61} "Generally, an adverse employment action is a materially adverse change in the terms and conditions of the plaintiff's employment." *Canady v. Rekau & Rekau, Inc.*, 2009-Ohio-4974, ¶ 25 (10th Dist.). This includes "firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.*, quoting *Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir. 2007). On the other hand, "[e]mployment actions that result in mere inconvenience or an alteration of job responsibilities are not disruptive enough to constitute adverse employment actions." *Canady* at ¶ 25.

{¶ 62} Appellant argues that he suffered adverse employment actions when he was disciplined in 2021 for an e-mail deemed to be "rude," and when the action plan was imposed. For his discipline, appellant served a five-day working suspension which did not involve a loss of pay or other benefits. There is no evidence that the suspension affected his job responsibilities. We have previously found that a three-day working suspension with pay was not an adverse employment action where it did not have any long-term impact on the terms and conditions of employment, even where the suspension represented a step in the progressive discipline system. *Moody v. Ohio Dept. of Mental Health & Addiction Servs.*, 2021-Ohio-4578, ¶ 30-32 (10th Dist.). Similarly, here, even assuming the discipline was a step in the agency's progressive discipline framework, we do not find evidence presented that the discipline altered the terms and conditions of employment to constitute an adverse employment action.

{¶ 63} With respect to the action plan, we cannot point to evidence from which a factfinder could conclude that appellant experienced a change in circumstance or job responsibilities rising to the level of an adverse employment action. Although the temporary action plan did require some additional tasks, like requiring appellant to report on his strengths and weaknesses, it did not materially alter appellant's responsibilities, nor did it affect his pay or work hours.

{¶ 64} Although not described as a performance improvement plan,[2] the action plan identified areas in which appellant was experiencing difficulty, outlined specific improvements to achieve, provided a timeline in which to do so, and noted that failure to adhere to the plan "may result" in the imposition of discipline pursuant to the BWC's progressive disciplinary guidelines. The federal court has recognized that placement on a performance improvement plan did not rise to the level of a constructive discharge, an adverse employment action, because it did not constitute objectively intolerable conditions even where there was a possibility of termination contingent on future events. *See Agnew v. BASF Corp.*, 286 F.3d 307, 310 (6th Cir. 2002) (holding that "criticism in performance reviews and institution of performance improvement plans, alone, do not constitute objectively intolerable conditions."). Similarly, here, we do not find the facts of this case present evidence sufficient to conclude that the action plan subjected appellant to a materially adverse change of conditions.

{¶ 65} Appellant also argues that the requirement that he return to in-person work in connection with the action plan constituted an adverse employment action because it changed a perceived benefit of his employment. But courts have recognized that the denial of work from home privileges is not an adverse employment action. *Harrison v. P&G Distrib., L.L.C.*, 290 F. Supp.3d 723 (S.D. Ohio 2017), citing *Stone v. Louisiana Dept. of Revenue*, 2016 U.S. Dist. LEXIS 91017 (E.D. La. 2016).

{¶ 66} Additionally, the record evidence demonstrates that appellant's telework benefit was not a term of his employment. The Teleworking Policy covering BWC

---

[2] Appellant described the action plan as a "performance improvement measure by which Injury Management Supervisor Melody Dials and Central Claims Service Office Manager Wilma Perez-Rhone would track several goals for improvement in my caseload," in a questionnaire he submitted in response to an internal investigation of his agency EEO complaint. (*See* Dials Depo. Ex. 2, Attachment R.) BWC employee, Rhonda Bell, testified in her deposition that the action plan was not a performance improvement plan because those plans are specific to performance evaluations while action plans are intended for short term action and results.

employees stated that teleworking was not an employee right, could be modified by the agency at any time for any reason, that teleworking does not affect an employee's basic terms and conditions of employment, and that revocation of the teleworking arrangement does not constitute a disciplinary action. The policy also stated that a supervisor may terminate or suspend teleworking privileges for employees performing at a substandard or unsatisfactory level while teleworking. Pursuant to the policy, appellant signed a telework agreement by which he acknowledged and agreed to comply with the teleworking policy. Additionally, appellant stated in a written questionnaire in connection with an internal investigation of his EEO complaint that, "I was the only member of my team whose teleworking agreement was suspended. Everyone else is supposed to return the day after Labor Day." (Dials Depo. Ex. 2, Attachment R.) This indicates that teleworking was ending for everyone within a short period after appellant was required to return to work.

{¶ 67} On these facts, we cannot find that a jury could reasonably conclude that the termination of a discretionary teleworking arrangement constituted an adverse employment action rather than an inconvenience. Although we decline to hold that a termination of telework would never rise to the level of an adverse employment action, we find on the circumstances present in this case that appellant has not presented a genuine dispute of material fact on this issue.

{¶ 68} Appellant's reliance on *Muldrow v. St. Louis*, 601 U.S. 346 (2024), does not instruct a different conclusion here. In *Muldrow*, the plaintiff was transferred from a prestigious law enforcement position with substantial responsibility to a uniformed job supervising patrol officers and performing administrative work. *Id.* at 359. This affected her schedule, which became less regular, involved weekend work, and she lost the privilege of using a take-home car. *Id.* The court determined the consequences of the transfer were sufficient to show an adverse change in employment terms or conditions. *Id.* The court held that the plaintiff "need show only some injury respecting her employment terms or conditions," and that the employer's action "must have left her worse off, but need not have left her significantly so." *Id.*

{¶ 69} Here, in contrast, appellant's duties, hours, and general responsibilities did not change during the short working suspension or as a result of the action plan. Based on

the foregoing, we cannot say that appellant has presented evidence creating a genuine dispute of material fact regarding whether an adverse employment action occurred.

{¶ 70} The failure to establish any single element of a prima facie case is fatal to a discrimination claim. *Taylor*, 2011-Ohio-6060 at ¶ 20 (10th Dist.). Therefore, appellant cannot establish the Court of Claims erred in granting summary judgment in appellee's favor on his disability discrimination claim. Accordingly, we overrule appellant's second assignment of error.

**Third assignment of error - retaliation**

{¶ 71} In appellant's third assignment of error, he argues that the Court of Claims abused its discretion in granting summary judgment to appellee on appellant's retaliation claim.

{¶ 72} Under R.C. 4112.02(I), it is an unlawful discriminatory practice "[f]or any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code." To establish retaliation, a plaintiff must prove that (1) he engaged in a protected activity, (2) the defendant was aware that the plaintiff had engaged in that activity, (3) the defendant took an adverse employment action against the plaintiff-employee, and (4) there is a causal connection between the protected activity and adverse action. *Greer-Burger v. Temesi*, 2007-Ohio-6442, ¶ 13, citing *Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990).

{¶ 73} The burden-shifting framework from *McDonnel Douglas* is relevant in a retaliation case. *Greer-Burger* at ¶ 14. Under that framework, if a complainant establishes a prima facie case, the burden then shifts to the employer to " 'articulate some legitimate, nondiscriminatory reason' " for its actions. *Id.*, quoting *McDonnell Douglas Corp.*, 411 U.S. at 802. If the employer satisfies this burden, the burden shifts back to the complainant to demonstrate "that the proffered reason was not the true reason for the employment decision." *Greer-Burger* at ¶ 14, citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

{¶ 74} Here, the Court of Claims concluded that appellant failed to establish a prima facie retaliation case. It further concluded that appellee had presented evidence that it had legitimate, non-retaliatory reasons for its actions, but appellant had failed to meet his reciprocal burden of demonstrating that appellee's actions were pre-textual.

{¶ 75} For the same reasons as discussed above in connection with appellant's discrimination claim, we cannot conclude that appellant has presented a genuine dispute of fact regarding whether he suffered an adverse employment action for purposes of his retaliation claim.

{¶ 76} Appellant alleged in his complaint that his requests for accommodation and filing of an internal EEO complaint were protected activity. For engaging in the protected activity, appellant alleged that appellee retaliated in three ways: (1) by disciplining him for alleged behavior; (2) by scrutinizing his work more closely; (3) by placing him on the action plan; and (4) by ordering him to return to in-office work.

{¶ 77} In the context of a retaliation claim, an adverse employment action is one that "a reasonable employee would have found . . . materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." (Internal quotations & citations omitted.) *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). "[T]he significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Id*. at 69; *see also Watson v. Cleveland*, 202 Fed.Appx. 844, 855 (6th Cir. 2006) ("Whether an employment action is materially adverse to a reasonable employee depends on the context in which the action takes place.").

{¶ 78} As discussed above, appellant has not presented evidence that would allow a trier of fact to reasonably conclude that the paid working suspension or the action plan, with its return-to-work requirement, altered the terms and conditions of employment. We also find that appellant has not presented evidence sufficient to create a question of fact regarding whether appellee's actions would have dissuaded a reasonable worker from engaging in protected activity. Appellant was able to file a grievance regarding the discipline and pursue relief through the normal channels, ultimately having the discipline overturned through arbitration. Regarding the action plan, there was no dispute that appellant was behind in completing tasks. A reasonable employee would expect some

action or oversight by an employer in light of the delinquent workload. Regarding telework, appellant represented that all BWC employees were returning to work later the same year. Thus, on the facts of this case, we cannot find a dispute of fact regarding whether there was an adverse employment action for the purposes of appellant's retaliation claim.

{¶ 79} Appellant further argues that, even in the absence of an adverse employment action, he can show he was subjected to severe or pervasive harassment by the increased scrutiny of his work and that should constitute retaliation. As noted above, appellant invited scrutiny of his work by acknowledging that he was behind in his caseload. To the extent appellant's argument is that there was a negative appraisal of his work as a result of the backlog, we have held that a negative appraisal of work performance alone does not constitute an adverse employment action. *See Mowery v. Columbus*, 2006-Ohio-1153, ¶ 23 (10th Dist.).

{¶ 80} Based on the facts presented in this case, we do not find evidence sufficient to create a question of fact regarding whether appellant's paid working suspension, the action plan, the return to in-office work, or any increased scrutiny of his work was materially adverse in that it might have dissuaded a reasonable worker from making or supporting a charge of discrimination. Therefore, because appellant has not presented a dispute of fact regarding an element of his prima facie case of retaliation, we cannot find that the Court of Claims erred in granting summary judgment in appellee's favor. Accordingly, we overrule appellant's third assignment of error.

## IV. Conclusion

{¶ 81} For the foregoing reasons, we sustain in part and overrule in part appellant's first assignment of error, and overrule appellant's second and third assignments of error. Accordingly, we affirm in part and reverse in part the judgment of the Court of Claims of Ohio, and we remand this matter to that court for further proceedings in accordance with law, and consistent with this decision.

*Judgment affirmed in part and reversed in part; cause remanded.*

MENTEL and LELAND, JJ., concur.

————————————